# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**SANDRA VALENTIN NUNEZ,**

        **Plaintiff,**

**-vs-**　　　　　　　　　　　　　　　　　　　　　　　**Case No. 6:06-cv-1628-Orl-UAM**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

_____

## **MEMORANDUM OF DECISION**

Plaintiff Sandra Valentin Nunez ["Nunez"] appeals to the district court from a final decision of the Commissioner of Social Security [the "Commissioner"] denying her application for a period of disability and disability insurance benefits. *See* Docket No. 1. For the reasons set forth below, the Commissioner's decision is **REVERSED and REMANDED**.

**I.     PROCEDURAL HISTORY**

On May 10, 2004, Nunez filed a claim for disability insurance benefits, claiming disability as of December 14, 2001. R. 50-52. On March 2, 2006, the Honorable Apolo Garcia, Administrative Law Judge ["ALJ"], held a 50-minute hearing on Nunez's claim in Melbourne, Florida. R. 295 -314. Attorney Krista Rush represented Nunez at the hearing. R. 295. The ALJ heard testimony from Nunez, and Natalie Tessari, Vocational Expert ("VE").

On July 14, 2006, the ALJ issued a decision that Nunez was not disabled and not entitled to benefits. R. 15-23A. Following a review of the medical and other record evidence, the ALJ found

that Nunez could perform her past relevant work as a legal secretary.  R. 23, Finding 6.  The ALJ concluded that Nunez was not disabled.  R. 23, Finding 7.

The Appeals Council denied review on September 28, 2006.  R. 5-7.  On October 18, 2006 Nunez timely appealed the Appeals Council's decision to the United States District Court.  Docket No. 1.  On March 5, 2007, Nunez filed in this Court a memorandum of law in support of her appeal.  Docket No. 8.  On May 3, 2007, the Commissioner filed a memorandum in support of his decision that Nunez was not disabled.  Docket No. 9.  The appeal is ripe for determination.

## II.     THE PARTIES' POSITIONS

Nunez assigns four errors to the Commissioner.  First, Nunez claims that the Commissioner erred in failing to consider Nunez's depression and anxiety.  Second, Nunez claims that the Commissioner erred by failing to accord controlling weight to the opinion of her treating physician, Dr. Ramirez.  Third, Nunez claims that the Commissioner erred in determining that she had the residual functional capacity ("RFC") to perform light work.  Fourth, Nunez argues that the hypothetical question posed by the ALJ to the VE was not supported by the record.

The Commissioner argues that substantial evidence supports his decision to deny disability. First, the Commissioner argues that there was no evidence of impairment due to depression or anxiety. Docket No. 9 at 10.  Second, the Commissioner argues that the ALJ properly discounted Dr. Ramirez's opinion for the reason it was inconsistent with the objective medical evidence of record. Docket No. Doc. 9 at 8-9.  Third, the Commissioner argues that substantial evidence supports the ALJ's determination of Nunez's RFC.  Docket No. 9 at 10.  Finally, the Commissioner argues that the hypothetical question comprehensively described Nunez's limitations and was proper.

## III. THE STANDARD OF REVIEW

### A. AFFIRMANCE

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord*, *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

**B.     REVERSAL**

Congress has empowered the district court to reverse the decision of the Commissioner without remanding the cause. 42 U.S.C. § 405(g)(Sentence Four). The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Serv.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *accord, Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). This Court may reverse the decision of the Commissioner and order an award of disability benefits where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord*, *Bowen v. Heckler*, 748 F.2d 629, 631, 636 - 37 (11th Cir. 1984). A claimant may be entitled to an immediate award of benefits where the claimant has suffered an injustice, *Walden v. Schweiker*, 672 F.2d 835, 840 (11th Cir. 1982), or where the ALJ has erred and the record lacks substantial evidence supporting the conclusion of no disability, *Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985).

**C.     REMAND**

The district court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. *Jackson v. Chater*, 99 F.3d 1086, 1089 - 92, 1095, 1098 (11th Cir. 1996). To remand under sentence four, the district court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim.

*Jackson*, 99 F.3d at 1090 - 91 (remand appropriate where ALJ failed to develop a full and fair record of claimant's residual functional capacity); *accord, Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the district court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision. *Falcon v. Heckler*, 732 F.2d 872, 829 - 30 (11th Cir. 1984) (remand was appropriate to allow ALJ to explain his basis for determining that claimant's depression did not significantly affect her ability to work) (treating psychologist acknowledged that claimant had improved in response to treatment and could work in a supportive, non-competitive, tailor-made work environment). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (ALJ should consider on remand the need for orthopedic evaluation). After a sentence-four remand, the district court enters a final and appealable judgment immediately, and then loses jurisdiction. *Jackson*, 99 F.3d at 1089, 1095.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: 1.) that there is new, non-cumulative evidence; 2.) that the evidence is material — relevant and probative so that there is

a reasonable possibility that it would change the administrative result; and 3.) there is good cause for failure to submit the evidence at the administrative level. *See Jackson*, 99 F.3d at 1090 - 92; *Cannon v. Bowen*, 858 F.2d 1541, 1546 (11th Cir. 1988); *Smith v. Bowen*, 792 F.2d 1547, 1550 (11th Cir. 1986); *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986); *see also*, *Keeton v. Dept. of Health & Human Serv.*, 21 F.3d 1064, 1068 (11th Cir. 1994).

A sentence-six remand may be warranted even in the absence of an error by the Commissioner if new, material evidence becomes available to the claimant. *Jackson*, 99 F.3d at 1095. With a sentence-six remand, the parties must return to the district court after remand to file modified findings of fact. *Jackson*, 99 F.3d at 1095. The district court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings.[1] *Id.*

## IV.  APPLICATION AND ANALYSIS

### A.  THE FACTS

Nunez was born on March 25, 1966, and was 39 years old on the day of hearing. R. 50. Nunez has a four-year college degree in secretarial sciences. R. 69, 298. Nunez has past relevant work as a legal secretary. R. 64, 298. Nunez stopped working full-time in 1997. R. 298. She worked for one week in 1998, and has not worked since then. *Id*.

---

[1] The time for filing an application for attorneys fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 ["EAJA"] differs in remands under sentence four and sentence six. *Jackson*, 99 F.3d at 1089, 1095 n.4 and surrounding text. In a sentence-four remand, the EAJA application must be filed after the entry of judgment before the district court loses jurisdiction. *Id.* In a sentence-six remand, the time runs from the post-remand entry-of-judgment date in the district court. *Id.* Any Plaintiff intending to seek attorney's fees for past-due benefits under 42 U.S.C. § 406 (b)(1)(A) shall move the Court to include in any remand order an extension of the 14-day period described in Fed. R. Civ. P. 54 (d)(2)(B) so as to specify an extended deadline that follows the Commissioner's determination of Plaintiff's past-due benefits. *Bergen v. Comm'r of Soc. Sec.*, 454 F. 3d 1273, 1278 n.2 (11th Cir. 2006).

Nunez has suffered with back, neck and joint pain and associated headaches since 1997.  R. 214-219, 221-235.  A radiology report dated April 17, 1997, showed normal cervical spine, normal dorsal spine, normal skull series, normal sacral spine, and paravertebral muscle spasms in the lumbar spine.  R. 110.  An EMG of the lower extremities dated August 19, 1998, was abnormal suggestive of an L4-5 irritability bilaterally.  R. 212.  A repeat lumbar MRI dated November 3, 1999, showed a central disc protrusion at L5-S1.  R. 114.

On October 9, 2000, rheumatologist Hector Ramirez, M.D. evaluated Nunez.  R. 123-124.  On examination, Nunez displayed "multiple trigger points in the characteristic areas of fibrositis, particularly in the second intercostal space and the anterior chest wall, the posterior neck bilaterally, in the lower back bilaterally."  R. 124.  Dr. Ramirez also noted that both trochanteric bursae were inflamed.  *Id*.  Nunez also displayed trigger points in the medial aspect of both knees and in the lateral aspect both elbows.  *Id*.  Dr. Ramirez diagnosed fibromyalgia syndrome, noting also a prior history of a positive ANA [antinuclear antibody] on lab draw.  *Id*.  Dr. Ramirez prescribed Ultram and Klonopin for pain and insomnia respectively.  *Id*.

Throughout 2001, Dr. Ramirez continued to document findings of multiple trigger points in the characteristic areas of fibromyalgia.  R. 115-119, 121.  The Plaintiff reported pain in her joints and muscles and fatigue.  Id.  In October of 2001, Dr. Ramirez diagnosed fibromyalgia syndrome with underlying depression and anxiety.  R. 118.  She was referred to Dr. Gonzales for treatment of the depression and anxiety.  *Id.*  At that time, Dr. Ramirez opined that Nunez was "doing well" on her medications for the fibromyalgia.  R. 116.

On February 5, 2002, Nunez followed up with Dr. Ramirez. R. 173. Nunez reported intermittent left-sided neck pain with no radiculopathic symptoms. Dr. Ramirez again assessed multiple trigger points. Dr. Ramirez prescribed Naprosyn, Elavil and Norflex. *Id*. On November 5, 2002, Nunez reported some aches and pains in her muscles and joints throughout her body. R. 170. She also reported some degree of fatigue despite the fact that she was sleeping well. *Id*. Dr. Ramirez found her condition to be stable and encouraged an exercise routine once cleared by the surgeon who recently performed her hysterectomy. *Id*. She had a negative ANA test, and Dr. Ramirez opined that Nunez did not have lupus or any other connective tissue disorder. *Id*.

On September 22, 2003, orthopedist Robert M. Love, M.D. evaluated Nunez for left shoulder pain. R. 126. On examination, Nunez displayed good internal rotation but pain on external rotation and forward flexion. An MRI showed a "rather large area of calcified tendinitis." Dr. Love diagnosed calcific tendinitis of the left shoulder and performed a cortisone injection. *Id*. By October 6, 2003, Nunez showed good range of motion with no pain. *Id*.

On May 19, 2004, Nunez reported to Dr. Ramirez that she was unable to tolerate medications Naprosyn and Norflex. R. 164. She reported constipation, and numbness in her hands when she walks. Dr. Ramirez again noted multiple trigger points in Nunez's musculoskeletal system. Dr. Ramirez discontinued Naprosyn and Norflex and prescribed Mobic for pain. Dr. Ramirez opined that Nunez "may have irritable bowel syndrome." *Id*. She was referred to a neurologist for the parathesias in her hands. *Id*.

On July 27, 2004, State Agency psychologist, James B. LeVasseur, Ph.D., evaluated Nunez's medical records. R. 128-40. He found that Nunez had no medically determinable impairment.

R. 128.  The medical records indicated that her treating physician prescribed Elavil for pain and fibromyalgia.  R. 140.  He further relied on a form completed by her treating physician that Nunez did not have a mental impairment that significantly interfered with functioning.  R. 140.

On August 11, 2004, Nunez reported pain in her left lower back for the last five days.  R. 159.  Examination revealed some tenderness in the left side of the lower back with no significant muscle spasms.  *Id*.  A lumbosacral X-ray dated August 11, 2004 revealed anterior spondylosis at L2, but no acute findings.  R. 161.  Dr. Ramirez prescribed Mobic and Norflex and recommended chiropractic treatment.  R. 159.  In a Patient Health Questionnaire completed that same day, Nunez reported that her pain moderately interferes with her ability to perform her normal work.  R. 188.

Nunez began chiropractic treatment with Michael Kambourelis, D.C., F.A.C.O. on August 18, 2004.  R. 156-57.  Nunez reported lower back pain, predominantly on the left side, for "several months."  R. 156.  She also reported bilateral neck and upper back pain primarily in the midline.  On examination, Nunez was not in acute distress.  R. 156.

In October 2004, Dr. Ramirez treated Nunez for periarthritis of the left shoulder.  R. 151.  He gave her an injection, prescribed Lortab as needed, and prescribed a set of range of motion exercises.  *Id*.  At her follow up visit two weeks later, she reported that the injection was effective.  R. 150.

On January 11, 2005, State Agency psychologist, Steven L. Wise, Psy.D., completed a second evaluation of Nunez's mental condition based on a medical record review.  R. 191-204.  He found no history of mental impairment.  R. 203.

On January 26, 2005, State Agency physician Reuben E. Brigety, M.D. completed a Physical Residual Functional Capacity Assessment.  R. 2, 205-211.  Dr. Brigety opined that Nunez retained the

ability to lift and carry no more than a maximum of 20 pounds occasionally and 10 pounds frequently, sit, stand and walk for about 6 hours per 8-hour workday, and to push and pull with no limitations. R. 206.

On February 9, 2005, Nunez again reported pain in her left shoulder. R. 289. She also reported stomach problems from taking Naprosyn. Dr. Ramirez again noted multiple trigger points in the characteristic areas of fibromyalgia. Nunez also displayed limited range of motion of her left shoulder. Dr. Ramirez noted a diagnosis of mechanical neck and back pain in addition to fibromyalgia. *Id*. He also noted that chiropractic treatment has been effective. *Id*.

On September 6, 2005, Nunez reported severe pain in her right knee. R. 286. Dr. Ramirez assessed instability in the right medial compartment. *Id*. An MRI of the right knee dated September 9, 2005, showed intact appearance to the medial and lateral menisci, a small joint effusion, and probable volume averaging or less likely small partial tear of the distal anterior cruciate ligament. R. 285. Dr. Ramirez considered the MRI to be "very benign looking." R. 283. On November 30, 2005, Nunez reported that her knee was back to normal. R. 282. She reported intermittent headaches and intermittent discomfort in the right shoulder. Dr. Ramirez again identified multiple trigger points, but stated that she was doing "reasonably well." R. 282-83.

On October 7, 2005, Dr. Kambourelis found that Nunez had improved joint mobility throughout the upper and mid-thoracic spine, fixation-type subluxations were diminishing between T3-T9, thoracic ranges of motion were increased in general with less pain upon movement, and trigger points were diminishing in the posterior shoulder musculature bilaterally. R. 284. Dr. Kambourelis also noted that Nunez reported decreasing neck and upper back pain. *Id*.

On January 23, 2006, Dr. Ramirez completed a Fibromyalgia Residual Functional Capacity Questionnaire detailing Nunez's symptoms and restrictions as a result of her fibromyalgia. R. 291-294.  Dr. Ramirez listed Nunez's symptomology as follows: multiple tender points, non-restorative sleep, chronic fatigue, morning stiffness, muscle weakness, subjective swelling, frequent severe headaches, anxiety and depression. R. 291.  Dr. Ramirez opined that the Nunez's pain and other symptoms would frequently interfere with her attention and concentration.  R. 292. Dr. Ramirez opined that Nunez was limited to a total of less than 2 hours of sitting, standing and walking in an 8 hour workday.  R. 293.  She can sit for 1 hour at a time and stand for 1 hour at a time. *Id*.  Nunez requires 10 minutes of walking every 60 minutes during an 8 hour workday.  She needs unscheduled breaks during the workday.  She can occasionally lift and carry less than 10 pounds and rarely 10 pounds or more.  R. 294.  Nunez can occasionally twist, stoop, crouch, climb ladders and stairs.  She can occasionally look down, look up, turn her head to the right or left and hold her head in a static position.  Dr. Ramirez opined that her impairments are likely to produce both good and bad days.  *Id.*  He does not, however, estimate the number of days Nunez was likely to be absent from work as a result of her impairments.

### B.     THE ANALYSIS

#### 1.     **Failure to Give Controlling Weight to Treating Physician's Opinion**

Nunez complains that the ALJ failed to give controlling weight to Dr. Ramirez's opinion regarding Nunez's physical limitations.  Doc. 8 at 9-10.  The ALJ found that Nunez had the residual functional capacity to lift and carry 20 pounds, and sit, stand and walk 6 hours per 8-hour workday with only occasional limitations of her ability to climb.  R. 23.  In contrast, Dr. Ramirez opined that

Nunez was limited to a total of less than 2 hours of sitting, standing and walking in an 8 hour workday, with the need for breaks. R. 293. Dr. Ramirez also opined that Nunez could on occasion lift and carry less than 10 pounds and rarely 10 pounds or more. R. 294.

Absent the existence of "good cause" to the contrary, the ALJ must give substantial weight to the opinion, diagnosis and medical evidence of a treating physician. *See MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *Lewis v. Callahan*, 125 F.3d 1436, 1439 - 1441 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); *Sabo v. Comm'r of Social Security*, 955 F. Supp. 1456, 1462 (M.D. Fla. 1996); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2).

The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. *See Edwards*, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements). Similarly, the ALJ may reject any medical opinion if the evidence supports a contrary finding. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1986). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also, Schnor v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1.) length of the treatment relationship and the frequency of examination; 2.) the nature and extent of the treatment relationship; 3.) the medical evidence supporting the opinion; 4.) consistency with the record a whole; 5.) specialization in the medical issues at issue; 6.) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir.1984); *see also,* 20 C.F.R. § 404.1527(d)(2). The opinion of a non-examining physician does not provide good cause to give little weight to a treating physician opinion when it contradicts the report of the treating physician. *Morrison v. Barnhart*, 278 F. Supp. 2d 1331, 1334 (M.D. Fla. 2003) (citing *Johns v. Boewn*, 821 F.2d 551 (11th Cir. 1987)).

The ALJ gave little weight to Dr. Ramirez's opinion due to the inconsistency of his opinions with the objective medical evidence of record. R. 23. The ALJ specifically relied on the frequent reports that Nunez was doing well. *Id*. The ALJ also noted that Nunez's trigger points were diminishing and that she only occasionally experienced headaches (R. 284). *Id*. The ALJ concluded that a longitudinal analysis of the record did not support Dr. Ramirez's opinions regarding the severity of Nunez's impairments or the extent of her limitations. *Id*.

Nunez argues that the ALJ failed to cite numerous notations in the record when Dr. Ramirez noted multiple trigger points on examination, and other medical evidence that supported Dr. Ramirez's opinion. Doc. 8 at 9-10. Nunez also argues that Dr. Ramirez did not find that Nunez's trigger points were diminishing, but only Nunez's chiropractor made such a finding. Doc. 8 at 10 [R. 284]. In

response, the Commissioner details Nunez's favorable response to treatment, the low doses of medication, the encouragement to exercise, and the repeated statements that she was doing well. Doc. 9 at 7-8.

The Court finds that the ALJ did consider the medical evidence cited by Nunez. See R. 19 - 23. The ALJ has stated sufficient specific reasons to reject Dr. Ramirez's opinion regarding the extent of Nunez's physical limitations as inconsistent with the medical record. The ALJ's findings in this regard, therefore, must be sustained.

### 2. Whether ALJ's RFC Finding is Supported by Substantial Evidence

Nunez argues that substantial evidence does not support the ALJ's finding that Nunez can perform light work. Nunez repeats her arguments regarding Dr. Ramirez's opinion of her functional limitations, which the Court already has addressed. Nunez's remaining argument is that the opinion of a non-examining physician alone cannot provide substantial evidence for the ALJ's RFC determination. The Commissioner argues that once the ALJ rejects the opinion of the treating physician, the ALJ may adopt the opinion of the non-examining medical expert.

The law is well established that the opinion of a non-examining physician alone does not constitute substantial evidence to support an administrative decision. *Bruet v. Barnhart*, 313 F. Supp. 2d 1338, 1346 (M.D. Fla. 2004) (citations omitted); *Swindle v. Sullivan*, 914 F.2d 222, 226 n.3 (11th Cir. 1990). Further, fibromyalgia is a unique medical condition because it is not susceptible to objective clinical tests and its symptoms are entirely subjective. *Bruet*, 313 F. Supp. 2d at 1346.

It is undisputed in this case that Nunez suffers from fibromyalgia and that her condition is severe. R. 20. The issue to be determined by the ALJ is to what extent Nunez is impaired.

Dr. Ramirez's treatment notes fail to describe the extent of pain allegedly suffered by Nunez and fails to address any functional limitations (other than in his RFC Questionnaire).  Given the subjective nature of fibromyalgia symptoms, and given Dr. Ramirez's failure to detail the extent of Nunez's limitations in his treatment notes, the opinion of Dr. Brigety as a non-examining physician in this case does not constitute substantial evidence.

Once the ALJ decided to reject Dr. Ramirez's opinion regarding the extent of Nunez's limitations, it was necessary to further develop the record to ascertain the extent of her limitations. The ALJ potentially could fully have developed the record by obtaining medical records from Nunez's treating chiropractor or by ordering a consultative examination, but he did not.  Remand is appropriate where the ALJ fails to develop a full and fair record of the claimant's residual functional capacity. *Jackson v. Chater*, 99 F.3d 1086, 1090-91 (11th Cir. 1996); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (failure to order a consultative evaluation may be reversible error when such an evaluation is necessary to make an informed decision).

The Court, therefore, reverses and remands this matter pursuant to Sentence Four so that the Commissioner may fully develop the record regarding Nunez's residual functional capacity, including considering whether a consultative examination is necessary.  Given the Court's ruling that substantial evidence did not support the RFC finding, the VE's opinion likewise was not based on substantial evidence.

### 3.      **Consideration of Nunez's Depression and Anxiety**

Nunez argued that the ALJ erred in finding that her depression and anxiety were not severe. Nunez points to evidence her rheumatologist, Dr. Ramirez, diagnosed her with depression and anxiety

(R. 118), and treated her symptoms with Elavil, Klonopin, and Prozac. Doc. 8 at 7. Dr. Ramirez noted that Nunez was being treated by a psychiatrist, Dr. Gonzales (R. 118), but there are no treatment records from Dr. Gonzales. Dr. Ramirez's records reflect that Nunez was prescribed 10 mg of Elavil and Prozac once daily in August 2001 (R. 117), and that the Elavil was increased to 25 mg in October 2001. R. 116. In October 2001, Dr. Ramirez added .5 mg of Klonopin to enhance sleep. R. 124. After this initial treatment in the late summer and fall of 2001, Dr. Ramirez made no further references to depression or anxiety, although Nunez continued to take 10 mg of Elavil at bedtime. R. 150-51, 159, 164, 168, 170, 172, 282.

In determining that Nunez's alleged depression and anxiety were not severe, the ALJ gave great weight to the opinions of two State Agency psychologists, James B. LeVasseur, Ph.D. and Steven L. Wise, Ph.D. R. 21. Dr. LeVasseur, Ph.D.,(Exhibit 7F). Dr. LeVasseur noted that there is no record of mental health treatment in the record, no diagnosis of a mental impairment in the record, and a note from a treating physician that the claimant has no mental impairment that significantly interferes with functioning. R. 128, 140. He further noted that the prescription for Elavil was for pain and fibromyalgia. R. 140. Dr. Wise also opined that Nunez had no medically determinable mental impairment. R. 203. The ALJ also noted that no treating physician has recommended a course of mental health treatment or an aggressive medication regimen, and that Nunez had not received any mental health emergency treatment. R. 20.

The ALJ gave little weight to Dr. Rarnirez's opinions due to the inconsistency of his opinions with the objective medical evidence of record. R. 23. As stated above, the ALJ may reject any medical opinion if the evidence supports a contrary finding, and may reject conclusory statements.

In this case, Dr. Ramirez made a conclusory finding of anxiety and depression. Dr. Ramirez made his finding without citing any facts in support of his conclusion and without any diagnostic testing. Additionally, Dr. Ramirez is a rheumatologist, not a mental health specialist. Further, there is no evidence that Nunez was impaired in any way by anxiety or depression. The ALJ's rejection of Dr. Ramirez's opinion as inconsistent with the medical evidence was well founded.

## VI. CONCLUSION

For the reasons stated above, the decision of the Commissioner is reversed and remanded pursuant to Sentence Four. The Clerk is directed to enter judgment in Plaintiff's favor and close the case.

**DONE AND ORDERED** on December 13, 2007.

*Donald P. Dietrich*
DONALD P. DIETRICH
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this Order to:

Mary Ann Sloan, Chief Counsel
Dennis R. Williams, Deputy Chief Counsel
Rolin Mathis, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia        30303-8920

The Honorable Apolo Garcia
Administrative Law Judge
c/o Social Security Administration
Office of Hearings and Appeals
Suite 300, Glenridge Building
3505 Lake Lynda Drive
Orlando, FL            32817